IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TRAVELERS CASUALTY AND SURETY
COMPANY OF AMERICA, a Connecticut
Corporation,

    Plaintiff,

v.                                                                    CIV 12-086 JCH/ACT

3B'S PARTNERSHIP; LYNNA T. BLEA;
KIMBERLIE DOXEY; NICK MOLINA;
3B'S LLC; JAMES N. BLEA; JIMMY J. BLEA;
AND LESLIE BLEA MOLINA,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on Defendants' Motion to Dismiss [Doc. 6], filed March 21, 2012 and fully briefed on April 19, 2012. *See* Docs. 15,17, & 18. The Court, having reviewed the parties' submissions and the relevant law, find the Motion should be denied.

## BACKGROUND

The instant litigation arises out of a construction project for the City of Santa Fe, with Lone Mountain Contracting, Inc. ("Lone Mountain") serving as general contractor. *See* Doc. 6 at 1, ¶ 1; Doc. 1 at ¶¶ 16-17. Plaintiff Travelers Casualty and Surety Company of America ("Travelers") issued a performance bond for the Project on behalf of Lone Mountain. *See* Doc. 1 at ¶ 14.

The City sued Travelers and Lone Mountain in New Mexico State District Court, seeking a declaratory judgment that Lone Mountain was in default on the Project. *See id.* at ¶ 20. In a separate action, also in state court, the City sued Lone Mountain and two of is subcontractors

and/or suppliers for breach of contract relating to the Project.  *See id.* at ¶ 22.  Defendants were not involved in either of these lawsuits brought by the City.  *See id.* at ¶ 24.

Both of the City's lawsuits were ultimately settled via a single settlement agreement among the following parties: the City, Lone Mountain, Travelers, Dow Roofing Systems, LLC (formerly known as Stevens Roofing), Watersaver Company, Inc.; and Boyle Engineering Corporation.  *See id.* at ¶ 24.  Defendants were not parties to the Settlement Agreement.  *See id.* at ¶ 26.  The Settlement Agreement recites the Parties' intent "to resolve the claims related to the Project and which have been or could have been brought by any one or more of the Parties against any one or more of the other Parties in the Actions."  *See* Doc. 1-4 at 1.  It provides further that "[t]he Parties hereto bind themselves, their successors, assigns, and legal representatives with respect to all covenants of this Agreement."  *See id.* at 4.  The Settlement Agreement provides further that

> [E]ach of the Parties hereby releases each of the other Parties, together with their respective predecessors-in-interest, successors-in-interest, employees, agents, attorneys, insurers, and parent, related, or subsidiary corporations or entities, from any and all claims, known or unknown, which have been or could have been brought in the Actions with respect to the Project; or which are or were related to the Project in any way; or which were or could have been raised by any Party up through the date of this Agreement with respect to the Project.  Except as explicitly set forth in this Agreement, released claims include, but are not limited to, claims for fraud, including fraud in the inducement, misrepresentation, contract, breach of contract, breach of covenant, bad faith, abuse of process, prima facie tort, accounting, amounts due, violation of state or federal law, promissory estoppel, detrimental reliance, products liability, breach of duty, breach of any other alleged obligation, actions brought by third parties, the alleged or actual violation of any law or legal obligation, the alleged or actual violation of any statute or regulation, assignable claims, claims involving indemnification, subrogation or subrogated claims, tort damages, negligence, or any claim for injunction, damages, or other relief arising under state or federal

law.

*See id.* at 2-3.

Defendants seek to dismiss Plaintiff's Complaint, arguing that Travelers' efforts to recover from Defendants pursuant to the Indemnity Agreement is "contrary to New Mexico Law and [is] properly brought before the First Judicial District Court of Santa Fe, New Mexico." *See* Doc. 6 at ¶ 8.  As support for their position, Defendants cite *Foundation Reserve Ins. Co. v. Mullenix*, 97 N.M. 618, 642 P.2d 604 (1982).  Defendants also contend there is no federal question at issue, and that the Court should exercise its discretion to dismiss the case in favor of state proceedings.  *See generally* Doc. 6.

## LEGAL STANDARD

### A.     Federal Subject Matter Jurisdiction and Abstention

"Federal courts have a 'virtually unflagging obligation ... to exercise the jurisdiction given them,' therefore, 'only the clearest of justifications will warrant dismissal.'" *Life-Link Int'l, Inc. v. Lalla*, 902 F.2d 1493, 1496 (10th Cir. 1990) (quoting *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817-18 (1976)).  Under *Younger v. Harris*, 401 U.S. 37 (1971) and its progeny, however,

> [a] federal court must abstain from exercising jurisdiction when:
> (1) there is an ongoing state criminal, civil, or administrative
> proceeding, (2) the state court provides an adequate forum to hear
> the claims raised in the federal complaint, and (3) the state
> proceedings involve important state interests, matters which
> traditionally look to state law for their resolution or implicate
> separately articulated state policies.

*Brown ex rel. Brown v. Day*, 555 F.3d 882, 887 (10th Cir. 2009) (quoting *Taylor v. Jacquez*, 126 F.3d 1294, 1297 (10th Cir. 1997)).  *Younger* abstention is the exception rather than the rule, but when its elements are met, abstention is "non-discretionary ... absent extraordinary

circumstances." *Id.* at 888 (quoting *Amanatullah v. Colo. Bd. of Med. Examiners*, 187 F.3d 1160, 1163 (10th Cir. 1999)).  As the Tenth Circuit has recognized, "'application of the *Younger* doctrine is absolute ... when a case meets the *Younger* criteria,' there is no discretion for the district court to exercise."  *Taylor v. Jacquez*, 126 F.3d 1294, 1296 (10th Cir. 1997) (quoting *Trust & Inv. Advisers, Inc. v. Hogsett*, 43 F.3d 290, 294 (7th Cir. 1994)).

The *Rooker-Feldman* Doctrine "arises by negative inference from 28 U.S.C. § 1257(a), which allows parties to state court judgments to seek direct review in the Supreme Court of the United States, but not to appeal to the lower federal courts."  *Mo's Express, LLC v. Sopkin*, 441 F.3d 1229, 1233 (10th Cir. 2006).  *Rooker-Feldman* precludes "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments."  *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).  In other words, the *Rooker-Feldman* Doctrine prevents "a party losing in state court ... from seeking what in substance would be appellate review of [a] state court judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights."  *Johnson v. DeGrandy*, 512 U.S. 997, 1005-06 (1994).

**B.      Discretionary Exercise of Jurisdiction Pursuant to Declaratory Judgment Act**

"In a case of actual controversy within its jurisdiction ..., any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a) (emphasis added).  As indicated by the text of the Declaratory Judgment Act, this Court "is not obliged to entertain every justiciable claim brought before it."  *State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 982-83 (10th Cir. 1994).

Trial courts should weigh the following factors when deciding whether to exercise jurisdiction pursuant to the Declaratory Judgment Act: (1) whether the action will settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to *res judicata*"; (4) whether use of a declaratory action will increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy that is better or more effective. *Id.* at 983 (citing *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1063 (6th Cir. 1987)).

## ANALYSIS

Defendants do not contend that the Court lacks jurisdiction to hear Plaintiff's claims nor do they mention abstention, but their argument for dismissal in favor of state-court proceedings makes it necessary to analyze whether this case is properly in federal court. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 670 (2009) ("Subject-matter jurisdiction cannot be forfeited or waived and should be considered when fairly in doubt.").

The parties agree that they are of diverse citizenship and that more than $75,000.00 is in controversy. *See* Doc. 1 at ¶ 10; Doc. 6 at 4. Federal jurisdiction therefore exists pursuant to 28 U.S.C. § 1332. Nonetheless, Defendants argue that New Mexico state court judges should decide the issues because "the case involves only New Mexico law." *See* Doc. 6 at 4. Defendants further imply the existence of ongoing state proceedings, asserting that "the parties have previously submitted themselves to the jurisdiction of the New Mexico State Courts who should continue to adjudicate this case." *Id.*

In fact, both of the related state-court lawsuits referenced in Defendants' Motion were dismissed due to settlement in 2011. The docket relating to the initial lawsuit brought by the

City against Lone Mountain and Travelers indicates that a Stipulated Dismissal with Prejudice was filed October 13, 2011.  *See* http://www.nmcourts.gov/caselookup/app (regarding Case No. D-101-CV-0200701142).  The later-filed litigation between the City, Lone Mountain, and subcontractors and/or suppliers JPS Elastomerics, Watersaver Co., and Boyle Engineering Corp. was also dismissed with prejudice on October 13, 2011 pursuant to stipulation.  *See* http://www.nmcourts.gov/caselookup/app (regarding Case No. D-101-CV-0200802946).  As Traveler's states in response to Defendants' Motion, "[i]t was not until after Travelers filed this action against the Defendants on [January] 6, 2012, that Lone Mountain (against whom no relief is sought in this matter) and the Defendants herein (who were not parties to either of the Bond Actions) filed a Motion to Enforce Settlement in the First Judicial District Court."  *See* Doc. 15 at 3.  *See also* http://www.nmcourts.gov/caselookup/app (regarding Case No. D-101-CV-0200701142, reflecting a Motion to Enforce Settlement filed March 20, 2012).

Given these facts, *Younger* abstention, which contemplates an *ongoing* state proceeding, is not appropriate.  Defendants do not argue that the *Rooker-Feldman* Doctrine applies.  But analyzing the facts before the Court, including the absence of Defendants as parties to either previous state-court lawsuit and the fact that both previous cases settled rather than progressed to any judgment by the Court, *Rooker-Feldman* does not appear applicable.  Neither Defendants' arguments nor the Court's independent analysis of the facts suggests that it lacks jurisdiction in this case.

Whether the Court should exercise its discretion to decide this matter is a separate consideration.  *See, e.g., Mhoon*, 31 F.3d at 983.  Defendants argue that a judgment in this case would not settle the controversy between the parties.  *See* Doc. 6 at 6-7 (arguing that "further action would necessarily follow in the State Court" whereas "the underlying State Court action is

capable of addressing all issues, including enforcement of the Settlement Agreement issues"). The Court fails to see how its judgment in this matter would necessitate further action in state court or how the state court, before which Defendants have not appeared as parties relating to this matter, is better able to address the matters at issue. The question for determination here is whether, under the terms of the Indemnity Agreement, Defendants are liable to Travelers. The Court finds that an answer to this question would "serve to clarify or settle legal relations in issue" and effectively "afford relief from the uncertainty giving rise to the proceeding." *See Mhoon*, 31 F.3d at 983.

Although they do not explain this contention, Defendants also contend that Travelers filed this suit for the purpose of "procedural fencing." *See* Doc. 6 at 7. The Court does not agree. This cause of action does not appear to re-tread ground already plowed in the prior state-court actions. Defendants were not parties to either state-court action or to the Settlement Agreement that effectively ended those actions. The Court finds that Travelers legitimately selected the federal forum, not as a result of "procedural fencing" as that phrase is used in *Mhoon*. As such, there is no basis upon which to conclude that the Court's hearing of this case will cause friction between state and federal courts. Indeed, none of the *Mhoon* factors weighs in favor of declining to exercise jurisdiction in this declaratory judgment action.

## CONCLUSION

For the foregoing reasons, **IT IS THEREFORE ORDERED** that Defendants' Motion to Dismiss [Doc. 6] is denied.

_____
UNITED STATES DISTRICT JUDGE